## MITSUBISHI INTERNATIONAL CORPORATION

v.

## UNITED STATES.

**C.R.D. 78–9; Court No. 77–7–01146.**

United States Customs Court.

July 25, 1978.

Bogle & Gates, Seattle, Wash. (David M. Salentine, Seattle, Wash., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Sidney N. Weiss, New York City, trial attorney), for defendant.

*Opinion and Order*

WATSON, Judge:

This action was commenced by a summons which states the underlying claim to be in part the ". . . improper use of penalty proceedings in rate/classification of dispute; failure to advise of grounds for penalty; assessment of penalty on basis of ground not stated." It has its origin in a lengthy protest filed on December 8, 1976 with the district director at Anchorage, Alaska in response to a notification by the district director dated September 10, 1976

---

that a demand for penalties in the amount of $618,130.19 was being mitigated to $33,073.00.

Defendant has moved to dismiss this action for lack of jurisdiction asserting that it is brought to challenge the imposition of a penalty, a matter which it claims is not within the subject matter jurisdiction of this court in that it is not a decision which can be protested under 19 U.S.C. § 1514(a).[1]

Plaintiff attempts to characterize the action as relating to classification, on the theory that by allegedly considering an alternative classification as a factor in his calculation of a reduced penalty the district director made a decision as to classification rather than as to a penalty.

It would appear however that once the administrative agency expresses its decision in the form of a penalty, that is the form with which plaintiff must contend. If, in the course of later consideration of this penalty, the agency takes into account other factors such as the proper classification of the importation, the dispute between the parties is not thereby transformed into a question of classification. Accordingly, for the purposes of this motion the court considers the protest underlying this action to have been made against a decision related to the imposition of a penalty.

 The success of defendant's motion to dismiss therefore depends on the correctness of its asserted proposition that the decision which plaintiff protests is not one which may be protested pursuant to 19 U.S.C. § 1514(a). The court is of the opin-ion that this assertion is not established by the cases cited in its support by defendant. For this reason the motion is denied. The possibility that the decision to impose a penalty is a decision as to an exaction within the meaning of 19 U.S.C. § 1514(a)(3) remains open. The cases cited by the defendant do not foreclose such a possibility and the drastic result of dismissal should not be reached in the absence of a clear demonstration of lack of jurisdiction.

A close reading of *Sheldon & Co. et al. v. United States*, 8 Ct.Cust.Appls. 215, T.D. 37455 (1917) does not disclose a controlling result. In that case protests were made, *inter alia*, against the imposition of a fine representing 20% of the estimated duty on certain diamonds imported by mail. The court gave its primary attention to the question of whether the protests were filed in time, which depended on whether all the moneys demanded by the collector were duties or "some other form of monetary exaction." The court found that the moneys demanded by the collector were *not* duties. It then opined that *it was not necessary to decide whether the sum required was a fee, charge or exaction within the meaning of the relevant tariff act.* It stated further that "[c]onceding that the importers paid the money in satisfaction of a customs fee, charge, or exaction, then protest not having been filed within 15 days after such payment was too late, and from that it results the decision of the collector became final and conclusive against them."

After this dispositive discussion the court went on to develop an alternative, second-

1. 19 U.S.C. § 1514(a):

 (a) . . . decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

 (1) the appraised value of merchandise;

 (2) the classification and rate and amount of duties chargeable;

 (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

 (4) the exclusion of merchandise from entry or delivery under any provision of the customs laws;

 (5) the liquidation or reliquidation of an entry, or any modification thereof;

 (6) the refusal to pay a claim for drawback; and

 (7) the refusal to reliquidate an entry under section 1520(c) of this title,

 shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Customs Court in accordance with section 2632 of Title 28 within the time prescribed by section 2631 of that title.

ary analysis in which it considered that if the moneys received by the collector were in compromise of a threatened suit in forfeiture, then, since those suits were beyond the jurisdiction of the Board of General Appraisers (predecessor to this court) and the appellate court, no relief could be granted the importers regarding the money paid in compromise or settlement.

It should be noted that the decision in *Sheldon* does not clearly dispose of the question of whether penalties are exactions within the meaning of the tariff acts, and even if the penalty involved therein was viewed as being outside the jurisdiction of the court, the result was reached because the penalty was a sum regarded as a compromise or settlement of a forfeiture proceeding, *a circumstance not present in this case.*

The case of *M. M. Scher & Sons, Inc. v. United States*, 24 Cust.Ct. 243, C.D. 1241 (1950) is also viewed as having no dispositive effect on the question before the court. Again the true ground of decision was the untimeliness of the protest, but to the extent the decision deals with the issue of penalty jurisdiction, it is opaque, confusing and probably mistaken in its perception that it was applying the holding of the *Sheldon* case.

In reality it expanded a point which was secondary and hypothetical to begin with far beyond its initial meaning. In *Sheldon* the thought was expressed as follows:

> If the moneys received by the collector were paid to him *as the representative of the United States attorney, or in compromise of a threatened suit in forfeiture* and not in satisfaction of duties or of a customs fee, charge, or exaction, then no relief can be granted the importers in this proceeding, inasmuch as *forfeitures and suits in forfeitures are beyond the jurisdiction of the Board of General Appraisers and of this Court. In re Chichester* [5 Cir.] (48 F., 281, 285–286). [Emphasis supplied.]

It is apparent that the penalty in *Sheldon* was considered as a payment made in connection with a suit in forfeiture or to obtain the lease of the seized importation, and a penalty as a self-contained act, unrelated to release from seizure, or the commencement of forfeiture proceedings would not necessarily be considered in the same manner. The penalty in *Scher* was evidently not demanded under the same circumstances and should therefore not have been as closely linked to suits in forfeiture as it was.

Moreover, the controlling consideration in lack of jurisdiction over suits in forfeiture was "[t]he anomaly . . . of the board of general appraisers taking jurisdiction in a cause pending in a court of the United States for a forfeiture of goods, and deciding, as it were, finally the issues involved . . . ." *In re Chichester*, 48 F. 281, 284 (5 Cir. 1891).

It hardly seems reasonable that this court, which is an Article III court of the United States, should find its jurisdiction limited by a theoretical discussion based on the lack of jurisdiction of a predecessor administrative tribunal vis-a-vis the then existing courts of the United States. In any event we are not dealing with suits in forfeiture but with what can be viewed as a suit contesting the denial of a protest against an exaction within the meaning of 19 U.S.C. § 1514(a).

In treating a penalty exaction as if it were exactly the same as a forfeiture and in then relying on the hypothetical discussion in *Sheldon* as conclusive, the court in *Scher* extended the reasoning of the *Sheldon* case beyond its original premise, which was alternative and, in my view, unrelated to pure penalties to begin with.

The case of *C. J. Fendrick v. United States*, 71 Treas.Dec. 829, T.D. 48986 (1937) did not involve a penalty.

In *Border Brokerage Co. et al. v. United States*, 41 Cust.Ct. 49, C.D. 2020 (1958),[2] at pages 57–58, the development of a distinction between the laws regarding the levying of fines and penalties for violations of

---

**2.** *Rev'd*, 47 CCPA 75, C.A.D. 732 (1960).

the customs laws and the laws governing determination of duties had nothing to do with the jurisdiction of the Customs Court. The distinction was made in order to make a point regarding the differences in burden of proof between reliquidations for fraud under section 521 of the Tariff Act of 1930 (in which the government has the burden of establishing the existence of fraud) and actions for the recovery of penalties (where the burden of proof is on the defendant). That case has no bearing on the question of whether the decision to impose a penalty may be protested under 19 U.S.C. § 1514(a).

The question posed here was not resolved in *Puget Sound Freight Lines et al. v. United States,* 36 CCPA 70, C.A.D. 400, 173 F.2d 578 (1949). There the phrase ". . . all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury)" was read as not intending to describe certain entry and clearance fees imposed on vessels, which fees were viewed as matters arising under the navigation laws and within the jurisdiction of the Secretary of Commerce. Penalties were not involved in that case and it would therefore be improper to place reliance on the later general discussion in that case of the jurisdictional boundaries of the Customs Court, the district courts, and the Court of Claims. This is particularly so in light of the court's emphasis in its analysis of Customs Court jurisdiction, on the connection of the fees and charges to the imported merchandise, a connection which certainly exists in the case of a penalty on the merchandise.

The case of *Carriso, Inc. v. United States,* 106 F.2d 707 (9th Cir. 1939) is similarly distinguishable. I do not think it is too much to require that support for the proposition that this court does not have jurisdiction over protests against penalties should come from cases that deal with penalties qua penalties. A matter of this importance should not be controlled by cases lacking a direct and definite determination of this question and should not be established by analogy, inference or supposition.

The series of cases cited by the defendant as examples of instances in which suits involving forfeitures and penalties or questioning underlying forfeitures or penalties were brought in district courts do not shed any light on the question involved here.

Most of them involved the seizure by the government of vehicles used in violation of the law and attempts by interested parties to regain possession.[3] The conclusions of the courts in those cases that the courts do not have jurisdiction over the decision of the Secretary of the Treasury to deny the petitions for remission have no bearing on the question of whether judicial review may be obtained of a decision for which special provision may have been made in 19 U.S.C. § 1514(a).

The mere fact that cases having some connection with penalties are brought in the district courts is not necessarily an indication that in other cases the Customs Court is an improper forum. It may well be that when the government is seeking to enforce the penalty it must use the district courts, but it does not follow that the importer seeking to challenge the decision to impose the penalty is similarly constrained. Again we return to the basic question of whether the statute granting the right to protest a decision as to an exaction encompasses decisions related to the imposition of a penalty.

The exclusivity of this court's jurisdiction (when it has subject matter jurisdiction) is not inconsistent in theory with the subject matter jurisdiction assertedly exercised by the district courts in the cases cited by defendant. This court's jurisdiction would remain exclusive, as it has always been, for those actions which arise from protestable decisions while the district courts would presumably remain the forum for judicial review of those decisions which are not protestable or for those cases in which the relief sought is not within the power of the Customs Court to grant.

**3.** *United States v. One 1961 Cadillac,* 337 F.2d 730 (6th Cir. 1964); *United States v. One 1973 Maxivan Truck,* 365 F.Supp. 833 (N.D.Fla. 1973); *Bramble v. Kleindienst,* 357 F.Supp. 1028 (D.Colo.1973); *Jary Leasing Corp. v. United States,* 254 F.Supp. 157 (E.D.N.Y.1966).

For this and other reasons the remaining cases cited by defendant are distinguishable.

*One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) deals with the question of whether a forfeiture may be accomplished by civil proceedings pursuant to 19 U.S.C. § 1497 following the owner's acquittal on a criminal charge of violating 18 U.S.C. § 545. The Supreme Court answered in the affirmative on the ground that the civil proceeding did not require proof of intent and was therefore unaffected by the lack of intent demonstrated by the acquittal on the criminal charge. At page 237, 93 S.Ct. at page 493, the court stated that section 1497 ". . . provides a reasonable form of liquidated damages for violation of the inspection provisions and serves to reimburse the Government for investigation and enforcement expenses."

At best the *One Lot Emerald* case indicates, by its existence, that the government seeks enforcement of forfeitures in the district courts, and is accommodated there, none of which negates the existence of jurisdiction in the Customs Court when the importer seeks to challenge decisions relating to the imposition of a penalty.

*Lee v. Thornton*, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975) has no connection to the question here at issue. In that action 19 U.S.C. §§ 1460 and 1618 were challenged insofar as they mandated procedures to effect forfeiture and remission or mitigation of penalties imposed after border patrol agents apprehended appellants and seized their vehicle when they entered the United States from Canada without passing through a customs station.

The Supreme Court ruled that it had no jurisdiction over appellants' claim to enjoin enforcement of the challenged provisions of the customs laws because the Tucker Act (28 U.S.C. § 1346(a)(2)), which was the asserted ground for jurisdiction below, did not empower the district court to grant injunctive or declaratory relief.

This is hardly the source of a rule that a penalty is not an exaction and may not be challenged in the Customs Court under appropriate circumstances. Moreover since the appellants were seeking a declaratory judgment, injunctive relief, mandamus relief and damages, none of which the Customs Court can provide, the bringing of action in the district court is not an indication of the lack of jurisdiction in the Customs Court in those instances when the relief sought is of the type available in the Customs Court. *See SCM Corporation v. United States (Brother International Corporation, Party-in-Interest)*, 450 F.Supp. 1178, 80 Cust.Ct. ——, C.R.D. 78–2 (1978).

*Leiser v. United States*, 234 F.2d 648 (1st Cir. 1956) is factually interesting but without relevance to this dispute. There the granting of a motion for summary judgment in the government's libel proceeding against 532.33 carats of diamonds was affirmed because the person in possession of the diamonds was found to be "arriving" within the meaning of 19 U.S.C. §§ 1496 and 1498(a)(6) despite the fact that his arrival in the United States was the result of an unintended and unforeseen diversion of his airplane due to bad weather.

*Sarkisian v. United States*, 472 F.2d 468 (10th Cir. 1973) was a legal tug of war over the seizure of certain jewelry. The government lost because it did not start forfeiture proceedings quickly enough. The opinion has no relevance to the jurisdictional question here involved.

In sum, none of the cases cited by defendant indicates the existence of a clearly established principle that decisions regarding the imposition of a penalty are not subject to protest under 19 U.S.C. § 1514. In addition, the defendant points to no statutory material or legislative history which would justify the dismissal it seeks.

Consequently the motion to dismiss is Denied.